UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DENISE GERMANOWSKI,

       Plaintiff,

v.

BUILDING INSPECTION
UNDERWRITERS OF PA,

       Defendant.

Case No.   2:21-cv-151

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES, Plaintiff, Denise Germanowski, by and through her attorney, Christi Wallace, Esq. of MKO Employment Law, and files this Complaint alleging as follows:

### I. Nature of the Action

1.     Plaintiff brings this action in violation of Title VII of the Civil Rights Act of 1964, Fair Labor Standards Act, Equal Pay Act and Pennsylvania Equal Pay Law. Plaintiff was discriminated/retaliated against due to her sex/gender and was discriminatorily paid due to her sex/gender.

### II. Jurisdiction and Venue

2.     This action arises under the statute cited in the preceding paragraph. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331.

3.     Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

4.      Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations under charge number 533-2020-00952, 533-2020-01953 and 533-2021-00432. Plaintiff was mailed Notice of Right to Sue from the EEOC on January 20, 2021. The Complaint has been filed within ninety (90) days of the Plaintiff's receipt, thus making this action timely.

### III. Parties

5.      Plaintiff, Denise Germanowski, is an adult individual with a primary residence located at 37 Ann Arbor Avenue, Pittsburgh, PA 15229.

6.      Defendant, Building Inspection Underwriters of PA ("BIU"), is a Pennsylvania Business Corporation with locations all over Pennsylvania. Defendant has a location at 343 Eicher Street, Pittsburgh, PA. 15237

### IV. Facts

7.      Plaintiff began working for Defendant in November 2005.

    a.  The last position Plaintiff held was Regional Manager.

8.      Plaintiff was terminated on November 13, 2020.

9.      In May 2016, then current Regional Manager, Bob Kauer ("Mr. Kauer"), was ending employment with Defendant.

    a.  Owner Mark McLaughlin ("Mr. McLaughlin"), repeatedly inferred to Plaintiff that she would be promoted to the position of Regional Manager.

10.     In August 2016, Plaintiff attended a meeting with Mr. McLaughlin and Keith Coll ("Mr. Coll.")

2

    a. Mr. McLaughlin told Plaintiff and Mr. Coll they would both have the same responsibilities, but only one of them would hold the title of Regional Manager.

    b. Mr. Coll, a man, was awarded both the title of Regional Manager, and to Plaintiff's knowledge and belief, a significant raise.

    c. Plaintiff kept the title of Office Manager.

        i. Plaintiff later learned from John Hudak ("Mr. Hudak"), President of Defendant, that Mr. Coll told Mr. Hudak that he would not work for or report to a woman.

    d. When Plaintiff asked Mr. McLaughlin if she would also be receiving a raise considering she was performing the same job duties as Mr. Coll, she was told by Mr. McLaughlin, "we will work on it later."

    e. Eventually, Plaintiff received a de minimis raise of $5,000, not nearly the same compensation as Mr. Coll, a man, even though they were performing the same job duties.

11. Plaintiff was passed over for promotion yet again in May 2018 when Mr. Coll announced he would be ending employment with Defendant.

    a. Plaintiff believed she would be promoted to Regional Manager considering she had been with the Company for 14 years.

    b. Instead, Shawn Jacobs ("Mr. Jacobs"), a man, who had only been with Defendant for about 3 years, was promoted to Regional Manager around May 24, 2018.

    c. At this time, Plaintiff had already been performing the duties of Regional Manager and should have been promoted but was passed over again by a male co-worker.

d.  To Plaintiff's knowledge and belief, Mr. Jacobs was offered $85,000/year.

e.  Plaintiff was performing all of the job duties of Regional Manager, had more experience than Mr. Jacobs, and was only making $50,000/year.

f.  To Plaintiff's knowledge and belief, Mr. Jacobs also received a "bonus" of $5,000 for his dedicated work.

g.  Plaintiff had been a dedicated employee for 14 years and never received a $5,000 bonus for her performance.

h.  Plaintiff complained about Mr. Jacobs' promotion and the unfair pay discrepancy to Mr. McLaughlin, to which she received no response.

12.    On February 3, 2019, Plaintiff was made Regional Manager and Mr. Jacobs was moved to Director of Field Operations with a pay decrease to $75,000/year.

a.  Mr. McLaughlin told Plaintiff he should have made her Regional Manager back in August 2016.

b.  Mr. McLaughlin told Plaintiff at this time they would discuss her salary increase within a few weeks.

13.    With this promotion, considering Mr. Jacobs was awarded a salary of $85,000/year while only working for Defendant for 3 years, Plaintiff assumed she would be awarded closer to $100,000 with her 14 years of service with Defendant.

14.    Plaintiff complained about her pay raise in February, March, April, May, and June of 2019.

15.    It was not until July 2019 Plaintiff was informed that she would be given a raise to $64,000/year.

4

    a.   Plaintiff was shocked and humiliated.

    b.   To Plaintiff's knowledge and belief, other current and former male Regional Managers made significantly more than $64,000/year.

    c.   Plaintiff was performing the same job duties as current and former male Regional Managers but making significantly less.

    d.   Mr. Jacobs was subordinate to Plaintiff and he was making $75,000 plus overtime.

    e.   Plaintiff's overtime was taken away.

    f.   Plaintiff was not given a Company car.

    g.   Plaintiff was given a car allowance, but to her knowledge and belief, it was far less than what other current and former male Regional Managers received.

16.    In December 2019, Plaintiff was looking forward to a 1% revenue bonus.

    a.   To Plaintiff's knowledge and belief, her predecessor, Mr. Coll, had received a 1% bonus as Regional Manager equaling at least $15,000.

    b.   To Plaintiff's knowledge and belief, her predecessor, Mr. Kauer, also received a 1% bonus as Regional Manager.

    c.   Mr. Jacobs also told Plaintiff that Mr. McLaughlin told him (Mr. Jacobs) that he would receive a 1% bonus as Regional Manager.

        i.   This was before he was switched to Director of Field Operations.

    d.   Plaintiff never received a 1% bonus as other current and former male Regional Managers received.

17.    Plaintiff sent a letter to Defendant on January 16, 2020 outlining how she was being discriminated against.

18.     Plaintiff filed an EEOC Charge (533-2020-00952) on February 12, 2020.

19.     After Plaintiff filed her first EEOC Charge (533-2020-00952), she was retaliated against.

20.     On March 3, 2020, Bonnie Risi ("Ms. Risi"), HR/Treasurer for Defendant, called and proceeded to scream at Plaintiff about Dave Platt's ("Mr. Platt"), Inspector for Defendant, pay.

   a.  Plaintiff told Ms. Risi that per Mr. Platt's hire packet, he gets paid his commission before the actual inspections are performed.

   b.  Plaintiff explained this was the contract Mr. McLaughlin agreed to with Mr. Platt years before she ever worked for Defendant.

   c.  Plaintiff had nothing to do with Mr. Platt's contract or how he got paid, yet Ms. Risi screamed and yelled at her for it.

   d.  Ms. Risi called Plaintiff again on May 25, 2020 screaming and yelling at her again regarding Mr. Platt's pay.

      i.  Again, Plaintiff explained this was the contract Mr. McLaughlin agreed to with Mr. Platt years before she even worked for Defendant and that she had nothing to do with Mr. Platt's contract or how he gets paid.

      ii.  Plaintiff was being blamed for something she had no control over.

21.     Around April 15, 2020, Mr. Jacobs went into Plaintiff's office and told her about a UPMC Mercy job in Oakland for the City of Pittsburgh.

   a.  Mr. Jacobs told Plaintiff that Mr. McLaughlin called him and told him to put a bid into the Electrical Contractor for the job.

    b.  According to Mr. Jacobs, he, Mr. McLaughlin and Mr. Hudak went back and forth about this job.

    c.  Mr. Jacobs told Plaintiff that Mr. McLaughlin told him to pick the Electrical Inspector he wanted and put a fee bid into the job.

    d.  As Regional Manager, Plaintiff should have been notified of this and involved in the decision-making process.

    e.  Plaintiff was the contact person for the City of Pittsburgh and did all the proposals and RFPs.

    f.  Plaintiff was told nothing about this job.

    g.  Mr. McLaughlin and Mr. Hudak skipped over her and went directly to Mr. Jacobs.

    h.  Plaintiff wasn't included in determining which Inspector was chosen for the job.

22.    During the COVID-19 pandemic, Defendant's offices were closed, but Plaintiff continued to work from home.

    a.  Ms. Risi instructed Plaintiff to forward all offices calls to her home phone number so she could answer all incoming calls.

    b.  Plaintiff put a personal message on her home phone's answering machine explaining Defendant's offices were currently closed so people would not be confused.

    c.  On April 27, 2020, Ms. Risi called Plaintiff to yell at her that she (Ms. Risi) had not approved Plaintiff's answering machine message.

    d.  Ms. Risi ordered Plaintiff to change the message, which she did.

23.    On June 3, 2020, Mr. Jacobs texted Plaintiff stating he spoke with Mr. McLaughlin and Mr. Hudak regarding the City of McKeesport's golf outing.

    a.    Mr. McLaughlin told Mr. Jacobs to put together a foursome using Harry Dilmore, Kikbuck Township Secretary, Pete Poninsky, Mayor of Leetsdale, Joe Motznik, McKeesport Inspector, and Ron Mulcahy, Plans Examiner.

    b.    Plaintiff was not included in any of these arrangements nor was she allowed to participate in any of the activities.

    c.    In July 2019, at the ALOM golf outing, Mr. McLaughlin told Plaintiff to get golf lessons so she could handle participating in golf outings as it was part of her job.

        i.    When the opportunity arose, Plaintiff was not allowed to participate.

    d.    On June 5, 2020, Mr. Jacobs called Plaintiff stating he couldn't get a fourth person for the outing and asked if her husband wanted to golf.

        i.    Once again, Plaintiff was specifically not asked to join.

        ii.    Plaintiff was told she was not allowed to participate in gold but she was permitted to attend the "picnic" after the outing.

24.    On June 15, 2020, Ms. Risi called Plaintiff and yelled at her for hiring a new Secretary.

    a.    All offices had called back their entire office staff at this time.

    b.    Plaintiff called back everyone except a temporary Secretary because she was not working out prior to the COVID-19 shut down.

    c.    The ladies in the Pittsburgh Office were overwhelmed with work because the Pittsburgh Office always had three Secretaries but were now down to two.

8

    d.   Plaintiff needed a third Secretary so she hired one.

    e.   It was within her job to hire staff.

    f.   Ms. Risi called Plaintiff and scolded her about hiring a third Secretary.

    g.   About 6 minutes passed by and Ms. Risi called Plaintiff again.

        i.   This time, she scolded Plaintiff for paying the new Secretary $16/hr.

       ii.   Ms. Risi continued to scold Plaintiff for approximately 12 minutes on how she needed to call her before making any decisions.

      iii.   Ms. Risi then went on to tell Plaintiff how she does not have the authority to offer someone $16/hr.

    h.   On June 16, 2020, Ms. Risi called Plaintiff again and continued to scold her for hiring a third full time employee.

    i.   On June 17, 2020, Plaintiff learned that Ms. Risi agreed to pay Mr. Platt an hourly wage on top of the commissions he was already paid per his contract.

        i.   Plaintiff was scolded for hiring a third Secretary yet Ms. Risi was permitted to double pay Mr. Platt.

    j.   On June 19, 2020, Ms. Risi called Plaintiff again to yell at her for hiring a third full time employee.

    k.   On June 24, 2020, Ms. Risi called Plaintiff and scolded her again about the new hire.

25.     Plaintiff filed a second EEOC Charge (533-2020-01953) on or around July 24, 2020.

26.     Plaintiff was further retaliated against after her second EEOC Charge was filed.

9

27.   Plaintiff was placed on administrative leave on October 22, 2020 by Mr. Hudak.

    a.   Mr. Hudak claimed there was money missing in excess of $10,000 over a period of two years.

    b.   Mr. Hudak told Plaintiff to clean out her desk.

    c.   Mr. Hudak then said, "you were the last person I would expect to steal money. I'm sorry."

    d.   Mr. Hudak said he would "investigate the matter."

28.   Plaintiff was fired on November 13, 2020.

    a.   Defendant claimed there were management issues, missing cash receipts, the billing practices and procedures were confusing and invoices were incorrect and/or confusing.

    b.   Defendant claimed the operation of the Pittsburgh office, where Plaintiff worked, was unsatisfactory.

29.   Defendant's reasons for Plaintiff's termination were pretextual and fabricated.

30.   Plaintiff believes that after she filed her second EEOC Charge, Mr. McLaughlin, Mr. Jacobs and Mr. Hudak targeted her and were trying to find "cause" to terminate her and when they couldn't find "cause," they fabricated evidence against her.

    a.   After Plaintiff filed her second EEOC Charge, she was completely ignored by Mr. Hudak and Mr. McLaughlin.

    b.   When Plaintiff was on vacation the week of August 10, 2020, Mr. Dilmore (Township Manager for Kilbuck Township, owner of space Defendant rents and

husband of former co-worker Chris Dilmore) told Plaintiff that Mr. Jacobs and Mr. McLaughlin were in the office on August 11, 2020 having a meeting.

    i.   Mr. Dilmore stated Mr. McLaughlin asked for keys to the offices.

    ii.   Only Plaintiff's office and Mr. Jacobs' office are under lock and key.

    iii.   Plaintiff believes Mr. McLaughlin and Mr. Jacobs were trying to gain access to her office to gather and/or fabricate evidence to use against her.

    iv.   On August 19, 2020, Plaintiff confronted Mr. Jacobs about the meeting he had while she was on vacation.

        1.   Mr. Jacobs told Plaintiff he was in the office on August 12, 2020 for a meeting with attorneys.

        2.   Plaintiff asked who was present at the meeting.

        3.   Mr. Jacobs stated Joe Motznik, the attorneys and Joe B. were present.

        4.   Mr. Jacobs neglected to mention that Mr. McLaughlin was in the meeting.

        5.   Plaintiff should have been included in such a meeting but she was intentionally left out.

c.   Plaintiff also began to notice when she would go into her office on certain mornings, her computer had been used.

    i.   There were approximately 20 times between July 2020 and October 2020 Plaintiff noticed someone had used her computer overnight.

11

    ii.  When Plaintiff would come in to work in the morning, computer programs were open on her computer.

    iii.  Also, files in her desk drawers would be moved or missing.

    iv.  Plaintiff was told by several coworkers that Mr. Jacobs and Mr. McLaughlin were trying to get into her desk.

        1.  Plaintiff believes Defendant was trying to access her files to gather evidence against her in order to fire her.

  d.  Furthermore, on September 17, 2020, Plaintiff was asked by Mr. Hudak to write down all of her job duties, passwords, accounts etc. and to have it done within the next 30 days.

    i.  Plaintiff felt that as of September 17, 2020, Defendant knew they were going to fire her, and just needed to gather "evidence" against her.

31.    Defendant's "reasons" for terminating Plaintiff were also false.

  a.  Defendant claimed there were serious management issues.

    i.  Plaintiff never had any issues with her job performance in the 15 years she worked for Defendant.

    ii.  It was not until after Plaintiff filed her second EEOC Charge that she was told her performance was an issue.

  b.  Defendant claimed there were missing cash receipts.

    i.  When Chris Dilmore retired, Plaintiff had a conversation with Mr. McLaughlin.

12

ii. Mr. McLaughlin told Plaintiff to follow the receipt procedure/practice that had already been in place for the past 15 years.

iii. Plaintiff asked Mr. McLaughlin if he wanted her to send him the cash receipts or just keep them.

    1. Plaintiff was told by Mr. McLaughlin to just keep them.

    2. The only receipts Plaintiff was to turn into him on a monthly basis were the credit card receipts.

    3. Plaintiff kept all receipts (cash or credit card) in an accordion-type envelope.

iv. Whenever Plaintiff used "petty cash" or the company credit card for dinners or office supplies, she would put all receipts into this envelope.

v. Every dollar Plaintiff spent was accounted for with receipts.

    1. There were times Mr. McLaughlin would come in and ask for "petty cash."

        a. Being the Owner, Plaintiff would give him money when he asked.

        b. Plaintiff would make a note of it but there wouldn't be an actual receipt for those instances.

vi. The procedure for keeping and/or recording receipts was the same for 15 years and it was never an issue.

vii. It was only an issue after Plaintiff filed her second EEOC Charge that it was an issue and she was blamed for it.

13

c.  Defendant claimed the billing practices and procedures were confusing.

   i.  Plaintiff was not responsible for the billing practices and procedures.

   ii.  These procedures were in place before Plaintiff began working for Defendant in 2005.

   iii.  If there was an issue with the practices and procedures, it would not be Plaintiff's fault.

   iv.  Plaintiff was simply following the already established practices and procedures.

d.  Defendant claimed invoices were incorrect and/or confusing.

   i.  Billing invoices have been a problem since Plaintiff began working for Defendant.

   ii.  Every contract Defendant has is different and gets billed differently.

   iii.  One of Plaintiff's goals as Regional Manager was to update all the contracts so billing would be uniform across the board.

   iv.  Out of approximately 90 contracts, Plaintiff did get about 20 contracts updated.

      1.  However, when COVID-19 hit, she was unable to complete this task.

   v.  Furthermore, each Inspector is supposed to fill out the paperwork correctly.

      1.  The office staff then enters the information into the billing program from that paperwork.

14

2.  If the Inspectors turn in the paperwork incorrectly, it gets billed incorrectly.

3.  The ladies in the office who do all the billing can only enter into the system the information they receive.

4.  There was one office assistant who was billing incorrectly on a regular basis and Plaintiff terminated that employee due to this issue.

5.  Plaintiff was also constantly reminding the Inspectors and the office staff to bill correctly.

e.  Defendant also claimed there was money missing in excess of $10,000 over 2 years.

   i.  Plaintiff never stole any money.

   ii.  Any "petty cash" Plaintiff used was accounted for.

   iii.  Anytime Plaintiff used the company credit card, Plaintiff provided a receipt.

   iv.  It was very rare for there to even be cash at Defendant's offices.

   v.  At the location where Plaintiff worked, Defendant did not normally receive cash payments from clients.

      1.  It was extremely rare that a client paid cash.

   vi.  This theft is to have allegedly occurred over the course of two years yet Defendant chose to wait until after Plaintiff had filed a second EEOC charge to confront and accuse her.

f.  Mr. Hudak said he would "investigate" these claims but to Plaintiff's knowledge no such investigation was performed.

    i.   Defendant intended to fire Plaintiff.

    ii.   Plaintiff was never questioned as part of any investigation.

    iii.   When Plaintiff was put on leave, Mr. Hudak told her to clean out her desk.

    iv.   Mr. Hudak also said, "I'm sorry" when he sent her home on leave.

        1.   Plaintiff believed Mr. Hudak knew the allegations against her were ridiculous.

        2.   He apologized to Plaintiff as if he knew what was being done to her was wrong.

32.    Plaintiff never had any issues with her job performance in the 15 years she worked for Defendant.

    a.   It wasn't until after Plaintiff engaged in protected activity that she was told her performance was an issue.

33.    To Plaintiff's knowledge and belief, Defendant waited until enough time had passed from Plaintiff's second EEOC filing in July 2020 so their motives would not appear suspicious or retaliatory.

34.    Plaintiff was discriminated and retaliated against.

**V. Causes of Action**

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. §2000e-2 and 42 U.S.C. §2000e-5(e)(3)(A)**
**Sex/Gender Discrimination**

35.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

36.     Defendant violated Title VII in the following ways.

    a.   Plaintiff received discriminatory compensation due to her sex/gender.

        i.   Plaintiff received less money than her male coworkers.

        ii.   Plaintiff performed the same duties as other male Regional Managers but was paid significantly less.

        iii.   In August 2016, Plaintiff was not properly compensated for performing the duties of Regional Manager due to her sex/gender.

            1.   To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Coll, a man, but only received a $5,000 raise while Mr. Coll received a significantly higher raise.

            2.   To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Coll, a man, but was paid significantly less due to her sex/gender.

            3.   As a result of being subjected to this discriminatory decision/practice, Plaintiff received less compensation due to her sex/gender.

        iv.   On May 24, 2018, Mr. Jacobs was promoted to Regional Manager.

            1.   To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Jacobs, a man, but was paid significantly less due to her sex/gender.

2. As a result of being subjected to this discriminatory decision/practice, Plaintiff received less compensation due to her sex/gender.

v. On February 3, 2019, when Plaintiff was promoted to Regional Manager, she had to beg and wait 5 months to receive a pay raise.

1. When Plaintiff finally did receive a raise, to Plaintiff's knowledge and belief, she was paid significantly less than current and former male Regional Managers.

b. Defendant consistently promoted male employees over Plaintiff.

i. Mr. Coll was given the title of Regional Manager over Plaintiff.

ii. Mr. Jacobs was given the title of Regional Manager over Plaintiff.

iii. As a result of being subjected to this discriminatory decision/practice, Plaintiff received less compensation due to her sex/gender.

c. Defendant refused to provide the same opportunities to Plaintiff as her male coworkers received.

i. Plaintiff repeatedly asked Mr. McLaughlin for certifications and was always denied.

ii. Defendant paid for other male employees to get certifications.

iii. Plaintiff was always told she had to pay for her own certifications.

iv. Defendant intentionally refused to pay for Plaintiff's certifications to keep her from advancing.

18

v.   As a result of being subjected to this discriminatory decision/practice, Plaintiff received less compensation due to her sex/gender.

d.   Plaintiff was terminated on November 13, 2020 due to her sex/gender.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964**
**Sex/Gender Retaliation**
**42 U.S.C. §2000e-3(a)**

37.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

38.     Plaintiff engaged in protected activity when she sent a Letter to the Defendant on January 16, 2020 detailing the discriminatory treatment she was receiving.

39.     Plaintiff engaged in protected activity when she filed an EEOC Charge on February 12, 2020.

40.     After Plaintiff engaged in protected activity in February 2020, Defendant retaliated against her.

a.   Plaintiff was subjected to a hostile environment.

b.   Plaintiff was excluded from key decision-making situations.

c.   Plaintiff was excluded by her male co-workers.

d.   Plaintiff was held to completely new practices and procedures.

i.   Plaintiff was scolded for hiring a new Secretary even though she never had an issue hiring staff in the past.

e.   None of these issues existed prior to Plaintiff reporting the discrimination and unfair compensation.

19

      f.   Plaintiff believes Defendant was trying to get her to quit.

41.    Plaintiff engaged in protected activity when she filed a second EEOC Charge around July 24, 2020.

42.    After Plaintiff engaged in protected activity in July 2020, Defendant retaliated against her even further.

      a.   For reasons detailed above and incorporated herein (*see supra Paragraphs 27-32 and subparts*), Plaintiff believes Mr. McLaughlin, Mr. Jacobs and Mr. Hudak targeted her and were trying to find "cause" to terminate her and when they couldn't find "cause," Defendant fabricated evidence against her. *See supra Paragraphs 27-32 and subparts.*

      b.   Plaintiff was put on administrative leave on October 22, 2020.

      c.   Plaintiff was then fired on November 13, 2020.

            i.   For reasons detailed above and incorporated herein *(see supra Paragraphs 27-32 and subparts)*, Defendant's reasons for Plaintiff's termination were pretextual, fabricated and false.

43.    Plaintiff never had any issues with her job performance in the past 15 years.

      a.   It wasn't until after Plaintiff engaged in protected activity that she was told her performance was an issue.

      b.   Defendant did not want to deal with Plaintiff's past, present and/or potential future complaints of discrimination and unfair pay any further so they fired her.

44.    Plaintiff was retaliated against and fired due to her sex/gender.

## COUNT III
### Violation of the Equal Pay Act ("EPA")
### 29 U.S.C. § 206(d)
### Unequal pay due to Sex/Gender

45.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

46.     Defendant is an employer under the Equal Pay Act.

47.     Plaintiff is an employee under the Equal Pay Act.

48.     Defendant violated the Equal Pay Act when it discriminated against Plaintiff in the compensation she received.

49.     During the period of August 2016 to November 2020, Defendant continually violated the Equal Pay Act, 29 U.S.C. §206(d), by paying wages to Plaintiff, a woman, at rates less than the rates it paid male employees in the same establishment for equal work on jobs requiring equal skill, effort and responsibility, and performed under similar working conditions.

    a.  In August 2016, Plaintiff was not properly compensated for performing the duties of Regional Manager.

        i.  To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Coll, a man, but only received a $5,000 raise while Mr. Coll received a significantly higher raise.

        ii.  To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Coll, a man, but was paid significantly less.

    b.  On May 24, 2018, Mr. Jacobs was promoted to Regional Manager.

      i.   To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Jacobs, a man, but was paid significantly less.

    c.   On February 3, 2019, when Plaintiff was promoted to Regional Manager, she had to beg and wait 5 months to receive a pay raise.

      i.   When Plaintiff finally did receive a raise, to Plaintiff's knowledge and belief, it was significantly less than current and former male Regional Managers receive.

50.    Plaintiff performed the same job duties as other male Regional Managers yet was paid significantly less.

51.    Plaintiff performed position of Regional Manager with the same skill, effort, responsibility and under the same working conditions as other male Regional Managers yet was paid significantly less.

52.    This was a continuing violation that occurred over a period of 4 years.

53.    Defendant's continual violation of the Equal Pay Act was willful.

### <u>COUNT IV</u>
**Retaliation in Violation of Fair Labor Standard Act ("FLSA")**
**29 U.S.C. § 215(a)(3)**

54.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

55.    Defendant is an employer under the FLSA/EPA.

56.    Plaintiff is an employee under the FLSA/EPA.

57.     Plaintiff made a series of complaints to Defendant regarding discriminatory and unequal wages within the meaning of the FLSA, 29 U.S.C. §215(a)(3), which incorporates by reference the Equal Pay Act.

   a.  When Mr. Coll was promoted in 2016, Plaintiff complained about the unequal and discriminatory pay.

   b.  When Mr. Jacobs was promoted in 2018, Plaintiff complained about the unequal and discriminatory pay.

   c.  From February 3, 2019 to June 2019, Plaintiff made a series of complaints and requests for a pay raise.

   d.  Plaintiff engaged in protected activity when she sent a Letter to the Defendant on January 16, 2020 complaining about the discriminatory and unequal wages.

   e.  Plaintiff engaged in protected activity when she filed an EEOC Charge on February 12, 2020 complaining about the discriminatory and unequal wages.

   f.  Plaintiff engaged in protected activity when she filed a second EEOC Charge around July 24, 2020 complaining about the discriminatory and unequal wages.

58.     After Plaintiff engaged in protected activity in February 2020, Defendant retaliated against her.

   a.  Plaintiff was subjected to a hostile environment.

   b.  Plaintiff was excluded from key decision-making situations.

   c.  Plaintiff was excluded by her male co-workers.

   d.  Plaintiff was held to completely new practices and procedures.

23

        i.  Plaintiff was scolded for hiring a new Secretary even though she never had an issue hiring staff in the past.

    e.  None of these issues existed prior to Plaintiff reporting the discrimination and unfair compensation.

    f.  Plaintiff believes Defendant was trying to get her to quit.

59.    After Plaintiff engaged in protected activity in July 2020, Defendant retaliated against her even further.

    a.  For reasons detailed above and incorporated herein (*see supra Paragraphs 27-32 and subparts*), Plaintiff believes Mr. McLaughlin, Mr. Jacobs and Mr. Hudak targeted her and were trying to find "cause" to terminate her and when they couldn't find "cause," Defendant fabricated evidence against her. *See supra Paragraphs 27-32 and subparts.*

    b.  Plaintiff was put on administrative leave on October 22, 2020.

    c.  Plaintiff was then fired on November 13, 2020.

        i.  For reasons detailed above and incorporated herein *(see supra Paragraphs 27-32 and subparts)*, Defendant's reasons for Plaintiff's termination were pretextual, fabricated and false.

60.    Plaintiff never had any issues with her job performance in the past 15 years.

    a.  It wasn't until after Plaintiff engaged in protected activity that she was told her performance was an issue.

    b.  Defendant did not want to deal with Plaintiff's past, present and/or potential future complaints of discrimination and unfair pay any further so they fired her.

61.     Defendant fired Plaintiff in retaliation for her complaints in violation of 29 U.S.C. §215(a)(3).

62.     Defendant's violation of the FLSA/EPA was intentional and undertaken with reckless indifference to Plaintiff's right to not be retaliated against for complaining of FLSA/EPA violations.

**COUNT V**
**Violation of Pennsylvania Equal Pay Law ("EPL")**
**43 P.S. § 336.3 et seq.**
**Unequal Pay due to Sex/Gender**

63.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

64.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

65.     Defendant is an employer under the Equal Pay Law.

66.     Plaintiff is an employee under the Equal Pay Law.

67.     Defendant violated the Equal Pay Law when it discriminated against Plaintiff in the compensation she received.

68.     During the period of August 2016 to November 2020, Defendant continually violated the Equal Pay Law by paying wages to Plaintiff, a woman, at rates less than the rates it paid male employees in the same establishment for equal work on jobs requiring equal skill, effort and responsibility, and performed under similar working conditions.

   a.   In August 2016, Plaintiff was not properly compensated for performing the duties of Regional Manager.

       i.   To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Coll, a man, but only received a $5,000 raise while Mr. Coll received a significantly higher raise.

      ii.   To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Coll, a man, but was paid significantly less.

  b.   On May 24, 2018, Mr. Jacobs was promoted to Regional Manager.

       i.   To Plaintiff's knowledge and belief, she was performing the same duties as Mr. Jacobs, a man, but was paid significantly less.

  c.   On February 3, 2019, when Plaintiff was promoted to Regional Manager, she had to beg and wait 5 months to receive a pay raise.

       i.   When Plaintiff finally did receive a raise, to Plaintiff's knowledge and belief, it was significantly less than current and former male Regional Managers receive.

69.    Plaintiff performed the same job duties as other male Regional Managers yet was paid significantly less.

70.    Plaintiff performed position of Regional Manager with the same skill, effort, responsibility and under the same working conditions as other male Regional Managers yet was paid significantly less.

71.    This was a continuing violation that occurred over a period of 4 years.

72.    Defendant's continual violation of the Equal Pay Law was willful and knowing.

## <u>COUNT VI</u>
## Retaliation in Violation of Pennsylvania Equal Pay Law ("EPL")
## 43 P.S. § 336.3 et seq.

73.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

74.     Plaintiff made a series of complaints to Defendant regarding the discriminatory and unequal wages within the meaning of the Pennsylvania Equal Pay Law.

   a.   When Mr. Coll was promoted in 2016, Plaintiff complained about the unequal and discriminatory pay.

   b.   When Mr. Jacobs was promoted in 2018, Plaintiff complained about the unequal and discriminatory pay.

   c.   From February 3, 2019 to June 2019, Plaintiff made a series of complaints and requests for a pay raise.

   d.   Plaintiff engaged in protected activity when she sent a Letter to the Defendant on January 16, 2020 complaining about the discriminatory and unequal wages.

   e.   Plaintiff engaged in protected activity when she filed an EEOC Charge on February 12, 2020 complaining about the discriminatory and unequal wages.

   f.   Plaintiff engaged in protected activity when she filed a second EEOC Charge around July 24, 2020 complaining about the discriminatory and unequal wages.

75.     After Plaintiff engaged in protected activity in February 2020, Defendant retaliated against her.

   a.   Plaintiff was subjected to a hostile environment.

   b.   Plaintiff was excluded from key decision-making situations.

c.  Plaintiff was excluded by her male co-workers.

d.  Plaintiff was held to completely new practices and procedures.

   i.  Plaintiff was scolded for hiring a new Secretary even though she never had an issue hiring staff in the past.

e.  None of these issues existed prior to Plaintiff reporting the discrimination and unfair compensation.

f.  Plaintiff believes Defendant was trying to get her to quit.

76.  After Plaintiff engaged in protected activity in July 2020, Defendant retaliated against her even further.

a.  For reasons detailed above and incorporated herein (*see supra Paragraphs 27-32 and subparts*), Plaintiff believes Mr. McLaughlin, Mr. Jacobs and Mr. Hudak targeted her and were trying to find "cause" to terminate her and when they couldn't find "cause," Defendant fabricated evidence against her. *See supra Paragraphs 27-32 and subparts.*

b.  Plaintiff was put on administrative leave on October 22, 2020.

c.  Plaintiff was then fired on November 13, 2020.

   i.  For reasons detailed above and incorporated herein *(see supra Paragraphs 27-32 and subparts)*, Defendant's reasons for Plaintiff's termination were pretextual, fabricated and false.

77.  Plaintiff never had any issues with her job performance in the past 15 years.

a.  It wasn't until after Plaintiff engaged in protected activity that she was told her performance was an issue.

b.   Defendant did not want to deal with Plaintiff's past, present and/or potential future complaints of discrimination and unfair pay any further so they fired her.

78.   Defendant fired Plaintiff in retaliation for her complaints in violation of the Pennsylvania Equal Pay Law.

79.   Defendant's violation of the Pennsylvania Equal Pay Law was willful and knowing with reckless indifference to Plaintiff's right to not be retaliated against for complaining of the violations.


WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor, and against the Defendant, and award all damages available at law and in equity, including: lost wages, front pay, compensatory damages, liquidated damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.


Respectfully Submitted,

/s/ Christi Wallace
PA ID: 313721
**MKO EMPLOYMENT LAW**
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
Direct: (412) 301-2702
c@mkolaw.com